JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

K.P., a minor, by and through his parent, Priscilla Figueroa

**(b)** County of Residence of First Listed Plaintiff: Florida
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John N. Zervanos, Esquire, Brian Doyle, Esquire
1525 Locust St., 8th Flr., Phila, Pa. 19102

## DEFENDANTS

American Heritage Property Management, LLC, and Michael A. Fisher

County of Residence of First Listed Defendant: Lancaster
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
131 Centerville, Road, Ste. C, Lancaster, Pa. 17603
379 Snake Lane, Kinzers, Pa. 17535

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 28 U.S.C. 1332

Brief description of cause: Lead Poisoning

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: October 20, 2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: 47 East Main Street, Apt. 2, Adamstown, PA 19501

***RELATED CASE IF ANY:*** Case Number:____________________ Judge:_____________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☑ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________________

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☑ 6. Other Personal Injury *(Please specify)*: Lead Poisoning
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*____________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☑ **does not** have implications beyond the parties before the court and ☐ **does** / ☑ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☑ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **K.P.**, a minor, by and through his parent,<br>**PRISCILLA FIGUEROA**<br>2207 Pontina Court, Apt. D<br>Kissimmee, FL 34741<br>Plaintiffs,<br>v.<br><br>**AMERICAN HERITAGE PROPERTY MANAGEMENT, LLC**<br>131 Centerville Road, Suite C<br>Lancaster, PA 17603<br><br>&<br>**MICHAEL A. FISHER**<br>379 Snake Lane<br>Kinzers, PA 17535<br>Defendants. | CIVIL ACTION<br><br>No.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff K. P., a minor, by and through his parent and guardian Priscilla Figueroa, brings this Complaint against Defendants American Heritage Property Management, LLC, and Michael A. Fisher, and alleges as follows:

**PARTIES**

1. Priscilla Figueroa, is an adult individual who resides with her child, Minor Plaintiff K. P., at 2207 Pontina Court, Apt. D, Kissimmee FL 34741.

2. Defendant Michael A. Fisher resides at 379 Snake Lane in Kinzers, PA 17535.

3. At all material times, Defendant Fisher was in the business of renting, managing, and maintaining a residential rental Property within the city limits of Lancaster, PA and owned the Property located at 47 East Main Street, Apt. 2, in Adamstown, PA 19501 ("Property").

4. Defendant American Heritage Property Management, LLC., and/or American Heritage Property Management Inc., and/or Home Sale Real Estate Services, Inc., Individually and d/b/a as American Heritage Property Management ("American Heritage") was a corporation and/or limited liability company duly organized under the laws of the Commonwealth of Pennsylvania with a principal place of business at 131 Centerville Road, Lancaster, PA 17603.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction for all causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Defendant, and because the amount in controversy exceeds $75,000.

6. Venue is proper pursuant to 28 U.S.C.A. §§ 1391(b), 1391(c), and 1391(d) because the underlying incident occurred within this judicial district and the principal place of business of Defendant American Heritage, and the principal domicile of Defendant Fisher, is located within this district.

## FACTUAL ALLEGATIONS

7. Defendant American Heritage entered into an agreement with Defendant Michael A. Fisher to manage, maintain, lease, rent and/or otherwise care for the Property located at 47 East Main Street, Apt. 2, Adamstown, PA 19501.

8. Defendant American Heritage's website identifies itself as "... an expert property management group [which will] handle every detail of your rental properties." *American Heritage Property Management*, https://www.ahpm.biz/ [accessed March 5, 2026).

9. American Heritage further indicates that as a property management company, it is "...tasked with overseeing the daily operations of a rental property" and will "handle your property

maintenance and repairs so you can have peace of mind ... Our professionals can efficiently identify issues, determine the cause and provide proper solution." *Id.*

10. American Heritage indicates that property owners have an obligation to check for "[m]old and other environmental toxins" and "[p]eeling paint" and that as a property management company it will "[wade] through tenant laws to ensure your property is compliant." *American Heritage Property Management*, https://www.ahpm.biz/guide-to-maintaining-your-rental-property [accessed March 5, 2026).

11. On or about February 10, 2021, Minor Plaintiff K.P.'s father Edwin Ponce entered into a lease agreement with defendant American Heritage for the Property at 47 East Main Street, Apt. 2, Adamstown, PA 19501.

12. Defendant Michael A. Fisher was responsible to provide a safe and habitable Property to Minor Plaintiff K. P.'s pursuant to the lease dated February 10, 2021.

13. Defendant Michael A. Fisher was responsible for providing a safe and habitable property to Minor Plaintiff K. P. either directly or through their agents, servants, and/or contractors, including defendant American Heritage Property Management, LLC.

14. Defendants knew or had reason to know Priscilla Figueroa would be renting said Property and further would be residing with minor child, Minor Plaintiff K. P.

15. At all times material hereto, each Defendant acted individually and/or by and through their supervisors, agents, servants, workers, and/or employees who acted within the course and scope of their employment and/or agencies, and each named Defendant acted as agent, servant, or worker of all other Defendants.

16. At all times material hereto, Defendants American Heritage had control or right to exercise control over the actions, activities, physical conduct and performance of it's agents,

employees and/or outside contractors, inspectors, and/or supervisors, servants, workers, and/or other employees who were acting within the scope and course of their employment, and in the furtherance of defendants respective businesses, and defendants joint and individual interests, and with defendants' authority.

17. At all times material hereto, Defendants were aware of, and recklessly, and otherwise were willfully indifferent to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines, directives, supervision, monitoring, and inspection for said Property.

18. From the inception of Minor Plaintiff K. P.'s tenancy at the Property, the Defendants were responsible for performing maintenance upon the Property, including removal and correction of dangerous levels of lead paint, but failed to properly remove or correct the said condition.

19. At the time of the leasing of the Property, the surfaces of the interior including but not limited to ceilings, window frames, and, walls of said property were covered with worn, chipped, flaking, and peeling paint, which contained quantities of lead that were dangerous, hazardous, and detrimental to the health of the occupants.

20. After Minor Plaintiff K. P. moved into the Property, he ingested and inhaled pieces and dust particles from the chipped and peeling paint as described above.

## COUNT I - NEGLIGENCE, RECKLESSNESS, WILLFUL CONDUCT, WANTON CONDUCT AND GROSS NEGLIGENCE

21. Minor Plaintiff, K.P. incorporates by reference the allegations set forth in the above paragraph, as if same were set forth at length herein.

22. Beginning in or around January 2023, when Minor Plaintiff K.P. was twenty-two

months of age, he began vomiting at night and suffering from insomnia.

23. On April 25, 2023, Minor Plaintiff K.P. blood lead level was 27.3 µg/dL, more than seven times the Centers for Disease Control and Prevention's blood reference value of 3.5 µg/dL.

24. On or about May 22, 2023, a lead inspection conducted by the UPMC Lead Poisoning Prevention and Education Program in Central Pennsylvania found significant amounts of lead within the Property.

25. Defendants were notified of the inspection results and thereby had actual notice that the Property contained lead hazards and that a young child residing there had been poisoned.

26. Despite that notice, Defendants failed to promptly and properly abate the lead hazards at the Property, and Minor Plaintiff K.P. continued to reside at the Property and to be exposed to lead.

27. Minor Plaintiff K.P.'s blood lead level remained elevated throughout 2023 and early 2024, measuring 18.3 µg/dL on July 21, 2023; 17.3 µg/dL on November 7, 2023; 13.5 µg/dL on January 28, 2024; 33.2 µg/dL on April 2, 2024; and 25.1 µg/dL on April 5, 2024. On April 14, 2024, K.P.'s blood lead level reached 48.8 µg/dL.

28. From April 15, 2024, through April 30, 2024, Minor Plaintiff K.P. was hospitalized at Reading Hospital with a diagnosis of toxic effect of lead and its compounds. On admission, he was suffering from difficulty sleeping, nighttime vomiting, and black stools.

29. Because the Property remained unsafe, upon Minor Plaintiff K.P.'s discharge his family was placed in a hotel through the hospital's social work department, the Department of Housing, and Lead-Free Families while the Property underwent remediation.

30. In or about March 2026, Minor Plaintiff K.P. and his mother vacated the Property and moved to Florida.

31. Lead is a toxic substance with adverse effects on human beings. It is particularly hazardous for young children, such as Minor Plaintiff K. P., because their bodies are developing rapidly, they absorb and retain lead more efficiently, and they will have adverse health affects at lower blood concentration levels.

32. Lead poisoning can cause learning disabilities, mental retardation, behavioral disorders, hyper irritability, lack of coordination, loss of appetite, vomiting, abdominal pain, and encephalopathy with brain edema, convulsions, permanent brain damage, and even death.

33. The greatest danger of lead poisoning for children is posed by the ingestion of peeling or flaking lead paint, which was applied to buildings where they reside or spend significant amounts of time. Poison results not just from eating paint chips but also from breathing, crumbling, and oxidizing lead paint which creates dust in the air.

34. As a direct, foreseeable and immediate result of the Defendants' conduct, Minor Plaintiff K. P. was found to have high and dangerous levels of lead in his blood requiring painful and repeated medical examinations, tests and treatment, which caused and continue to cause him to suffer interruptions of his ordinary daily life and intellectual development, as well as post present and future anxiety and pain, suffering, mental and emotional distress and fear.

35. As an immediate result of Defendants' conduct Minor Plaintiff K. P. suffered permanent injuries which have affected and retarded his future educational, social, vocational, and intellectual development.

36. At and around the time of his elevated blood lead levels and hospitalization, Minor Plaintiff K.P. suffered a marked developmental regression.

37. On May 12, 2025, an evaluation at the Center for Autism and Developmental Disabilities determined that Minor Plaintiff K.P.'s autism had progressed from Level 2 to Level 3,

with accompanying language impairment, requiring very substantial support. His scores on standardized instruments fell in the severe range. He was also diagnosed with global developmental delay and Attention-Deficit/Hyperactivity Disorder, combined type.

38. Minor Plaintiff K.P. has also been diagnosed with intellectual disability. A neuropsychological evaluation on November 17, 2025, estimated his abilities at below a two-year-old age equivalent.

39. Now five years old, Minor Plaintiff K.P. is essentially nonverbal, with a vocabulary of approximately ten to fifteen words. He cannot verbally communicate his needs, cannot understand or follow commands, is not toilet trained, cannot dress himself, cannot eat with utensils, and requires assistance with all activities of daily living.

40. Minor Plaintiff K.P. requires constant one-to-one supervision. He elopes, has no awareness of danger, runs toward bodies of water and into the street, and continues to put non-food items in his mouth.

41. Minor Plaintiff K.P. suffers from hyperactivity, constant self-stimulatory behavior, tantrums, chronic sleep disturbance, loss of appetite, and a severely restricted diet. He requires antipsychotic medication to manage his behavior and melatonin to sleep.

42. Minor Plaintiff K.P. has diminished deep tendon reflexes and decreased sensation in his feet, consistent with lead-induced peripheral neuropathy, and is undergoing further neurological evaluation, including electromyography, nerve conduction studies, and long-term electroencephalogram monitoring.

43. K.P. will require lifelong assistance. He will be unable to live independently or to obtain gainful employment.

44. K.P. will require ABA therapy, speech therapy, occupational therapy, physical

therapy, special education, psychiatric and neurological care, medication, and supervision for the remainder of his life.

45. . To the extent K.P. had any pre-existing developmental condition, including a diagnosis of Level 2 autism spectrum disorder, Defendants' conduct aggravated, accelerated, and exacerbated that condition.

46. Minor Plaintiff K. P., also incurred and will continue to incur medical expenses as a result of the lead poisoning.

47. Minor Plaintiff K.P.'s parents and guardians learned that Minor Plaintiff K.P. was sickened by the lead after receiving medical treatment through Lancaster General Hospital's Family Health Service after blood tests revealed elevated levels of lead within minor plaintiff's blood and further learning that minor plaintiff was now injured as a direct result of lead exposure.

48. The negligence, carelessness, recklessness, and wantonness of the Defendants consisted of the following:

a. permitting Priscilla Figueroa to move into the Property knowing that children, such as Minor Plaintiff, K.P, would be living in the Property and would be exposed to the hazardous material;

b. knowing of the dangerous condition prior to leasing the Property;

c. knowing of the dangerous condition and permitting a child to reside in the premises;

d. failing to warn of the dangerous and hazardous condition;

e. failing to properly inspect and maintain the property;

f. failing to test the chipped and peeling paint for lead;

g. failing to remove the chipped and peeling paint and in other ways acting in a careless and negligent manner with respect to the removal of the peeling paint;

h. failing to adequately and properly remove the dangerous and hazardous materials, more specifically lead based paint, from the leased premises when

Defendants knew, or should have known, of the dangerous propensities of said paint and the harmful effects it would have on the Minor Plaintiff K.P.;

i. failing to take reasonable, sufficient and proper precautions reasonably calculated to protect persons such as the Minor Plaintiff K.P., to warn them of the inherently dangerous, deleterious, ultra hazardous, poisonous, and otherwise highly harmful effects of ingestion, inhalation, absorption and exposure to lead paint chips and dust;

j. failing to correct and eliminate the harmful effects of ingestion, inhalation, absorption and exposure to lead paint chips, and flaking even after being put on notice of their existence within the premises;

k. knowing or should having known, from the inception of Minor Plaintiff K.P.'s tenancy of the premises, that minor children lived in the premises and are susceptible to irreparable injury from lead paint poisoning;

l. knowing or should having known, from the inception of Minor Plaintiff K.P.'s tenancy in the premises, that the surfaces of said premises contained lead paint which was chipping, and flaking and otherwise hazardous to the health and well-being of Minor Plaintiff K.P.;

m. knowing or should having known, from the inception and through the Minor Plaintiff K.P.'s tenancy of the premises, that the rented premises had a level of lead in the paint, plaster and/or other accessible materials on the interior and exterior surfaces that was chipping and flaking and hazardous to the health and well-being of Minor Plaintiff K.P.;

n. carelessly, recklessly and negligently removing and/or attempting to remove or correct the condition caused by the dangerous levels of lead paint present on the interior and exterior surfaces of the premises where Minor Plaintiff K.P. resides or spends a great deal of time and failing to remove or correct said dangerous condition in a prompt, proper, safe and effective manner;

o. otherwise being careless and negligent under the law.

51. As a direct, foreseeable, and proximate result of Defendants' conduct, Minor Plaintiff K.P. was found to have high and dangerous levels of lead in his blood, requiring painful and repeated medical examinations, blood draws, x-rays, hospitalization, chelation therapy, and other treatment.

52. As a direct, foreseeable, and proximate result of Defendants' conduct, Minor Plaintiff K.P. sustained personal injuries including lead poisoning resulting in neurological, physiological, and psychological damage, including but not limited to the the injuries described in paragraphs 47 through 56 above, and sustained permanent injuries to his brain, nerves, and nervous system.

53. As a direct, foreseeable, and proximate result of Defendants' conduct, Minor Plaintiff K.P. has suffered and will continue to suffer an impairment of his learning capacity and permanent injuries that have affected and retarded his educational, social, vocational, and intellectual development.

54. As a direct, foreseeable, and proximate result of Defendants' conduct, Minor Plaintiff K.P. has suffered and will continue to suffer pain, suffering, inconvenience, mental and emotional distress, anxiety, fear, embarrassment, humiliation, and loss of life's pleasures.

55. As a direct, foreseeable, and proximate result of Defendants' conduct, Minor Plaintiff K.P. has suffered a total loss of his future earning capacity and will be permanently prevented from attending to his usual daily duties and occupations.

56. As a direct, foreseeable, and proximate result of Defendants' conduct, Minor Plaintiff K.P. will incur, after reaching the age of majority, expenses for medical care, therapy, medication, supervision, attendant care, and assisted living for the remainder of his life.

57. Defendants' conduct, including their continued rental of the Property to a family with a lead-poisoned toddler after receiving notice of lead hazards, and their failure to abate those hazards for nearly a year before K.P. was hospitalized, was outrageous and demonstrated a reckless indifference to the health and safety of K.P., warranting the imposition of punitive damages.

**WHEREFORE**, Minor Plaintiff K.P. demands judgment against the Defendants, individually, jointly and severally, for compensatory and punitive damages in excess of $75,000.00 exclusive of costs, prejudgment, interest and post judgment interest as the law may allow.

## COUNT II BREACH OF WARRANTY

49. Minor Plaintiff, K.P. incorporates by reference the allegations set forth in the above paragraph, as if same were set forth at length herein.

50. Defendants breached the implied and express warranties of habitability as follows:

a. failing to provide a safe and hazardous free premises;

b. failing to properly inspect and maintain the property;

c. failing to test the chipped and peeling paint for lead;

d. failing to remove the chipped and peeling paint and in other ways acting in a careless and negligent manner;

e. failing to adequately and properly remove the dangerous and hazardous materials, more specifically lead based paint, from the leased premises when Defendants knew, or should have known, of the dangerous propensities of said paint after chipping and flaking and the harmful effects it would have on the Minor Plaintiff K.P.;

f. failing to take any reasonable precaution or to exercise reasonable care to adequately or sufficiently warn Minor Plaintiff K.P., his parents and legal guardians, and other persons similarly situated of the risks, dangers and harm to which they were exposed by contact with, ingestion, inhalation, absorption and exposure to lead paint products and lead paint that was chipping and flaking.

g. carelessly, recklessly and negligently removing and/or attempting to remove or correct the condition caused by the dangerous levels of lead paint present on the interior and exterior surfaces of the premises where Minor Plaintiff K.P. resides or spends a great deal of time and failing to remove or correct said dangerous condition in a prompt, proper, safe and effective manner.

**WHEREFORE**, Minor Plaintiff K.P. demands judgment against the Defendants,

individually, jointly and severally, for compensatory and punitive damages in excess of $75,000.00 exclusive of costs, prejudgment, interest and post judgment interest as the law may allow.

**SOLOFF & ZERVANOS**

BY:________________________________

John N. Zervanos, Esq. (Pa. I.D. #49615)
Brian M. Doyle, Esq. (Pa. I.D. #319475)
1525 Locust Street, 8th Flr.
Philadelphia, PA 19102
(215) 732-2260
Counsel for Minor Plaintiff, K.P.

Date: October 20, 2026